IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| WESLEY A. THOMPSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CIV-14-1184-HE |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff applied for benefits on April 20, 2010, alleging he became disabled on December 5, 2009, due to a nonfunctioning right kidney, dysfunctional left kidney, and high blood pressure. (TR 251). Plaintiff stated he had a high school education and previously worked as a stocker, particle board cutter, floor hand, and drag finish operator. (TR 252-253).

Plaintiff completed a written report of his usual daily activities in which he reported he loses his balance, has dizziness and abdominal and back pain that limit his activities, and has "problems" with stress. (TR 240-247).

Plaintiff testified at an administrative hearing conducted before Administrative Law Judge Belcher ("ALJ") on August 25, 2011, and in a second administrative hearing conducted before the ALJ on June 4, 2013. (TR 30-64, 65-79). At the second hearing, Plaintiff amended his alleged disability onset date to December 5, 2008. (TR 17, 69). A vocational expert ("VE") also testified at the first administrative hearing.

In a decision entered July 19, 2013, the ALJ found that Plaintiff was last insured for Title II benefits on June 30, 2009. (TR 17, 19). The ALJ found that Plaintiff had not engaged in substantial gainful activity from December 5, 2008, the date on which he alleged he became disabled, through the date he was last insured on June 30, 2009. (TR 19).

Following the agency's well-established sequential evaluation procedure, the ALJ found at step two of the procedure that Plaintiff had severe impairments due to "left kidney dilated without obstruction, right kidney non-functioning, kidney disease and stone, urinary tract disorder and overweight." (TR 19).

Proceeding to steps three and four, the ALJ found that these impairments were not *per se* disabling in light of the medical evidence in the record and that, considering all of the evidence in the record, Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary exertional level with additional limitations to occasional postural movements and inability to work with vibrating tools or vibration. (TR 21). The ALJ found

2

that this RFC for work precluded the performance of Plaintiff's previous jobs and proceeded to the fifth and final step of the sequential evaluation procedure.

At step five, the ALJ relied on the VE's hearing testimony concerning the availability of jobs for an individual with Plaintiff's RFC for work and found that Plaintiff was not disabled as he was capable of performing jobs that are available in the economy, including the sedentary, unskilled jobs of food order clerk, charge account clerk, and assembler. (TR 24). The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with

disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

III. RFC and Hypothetical Questioning

Plaintiff first contends that even though the ALJ found his mental impairment due to anxiety to be nonsevere the ALJ erred by failing to include any mental limitations in the hypothetical question posed to the VE (which mirrored the ALJ's RFC finding) and in the RFC finding.

An ALJ's hypothetical question to the VE must accurately reflect the "impairments and limitations that were borne out by the evidentiary record." Newbold v. Colvin, 718 F.3d 1257, 1268 (10th Cir. 2013)(internal quotation marks and brackets omitted); see Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995)(stating ALJ's hypothetical questions "must include all (and only) those impairments borne out by the evidentiary record"). Testimony elicited from a hypothetical question that does not precisely relate all of a claimant's impairments cannot provide substantial evidence in support of an ALJ's decision. Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).

A severe impairment is one that "significantly limits" a claimant's physical or mental

4

ability to do basic work activities. 20 C.F.R. § 404.1520(c). "When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." Carpenter v. Astrue, 537 F.3d 1264, 1268 (10th Cir. 2008)(quotation omitted). This procedure first requires the ALJ to evaluate the claimant's symptoms, signs, and laboratory findings which are relevant to the ability to work, sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2). The Commissioner must then evaluate the degree of functional limitations resulting from the impairment, using the "Part B" criteria, which leads to a determination of the severity of the claimant's mental impairment(s). 20 C.F.R. §§ 404.1520a(c), (d).

In assessing the severity of Plaintiff's "medically determinable mental impairments [sic] of anxiety," the ALJ found in his decision that this impairment "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were [sic] therefore nonsevere." (TR 20). In evaluating Plaintiff's mental impairment, the ALJ addressed in the decision each of the four relevant functional areas as required by the regulations. See 20 C.F.R. § 404.1520a; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C.

The ALJ found that Plaintiff's anxiety impairment had resulted in only "mild" limitation in activities of daily living, "mild" limitation in social functioning, "mild" limitations in concentration, persistence, or pace, and "no" episodes of decompensation of extended duration. (TR 20). These findings mirrored the findings of the agency medical consultant, Dr. Gerrity, set forth in a Psychiatric Review Technique form appearing in the

record. (TR 422). In light of these findings, the ALJ found that Plaintiff's mental impairment was not severe under 20 C.F.R. § 404.1520a(d)(1)[1] and did not limit Plaintiff's ability to work.

Plaintiff does not point to any evidence in the record that would demonstrate his anxiety impairment had more than a minimal impact on his ability to work. The ALJ pointed to specific medical evidence in the record to support the findings of mild functional limitations, including the office notes of Plaintiff's treating physician, Dr. Hubbard, and Plaintiff's own report that he continued working beyond his alleged disability onset date. Dr. Hubbard's records show that Plaintiff was prescribed anti-anxiety medication for a brief period of time, and that the medication was discontinued in May 2009, prior to the date Plaintiff was last insured. (TR 351-352). Dr. Hubbard repeatedly noted that Plaintiff exhibited normal affect and normal mood. (TR 343, 346, 349, 352, 355). Plaintiff stated he stopped working in December 2009 although he alleged he became disabled in December 2008. (TR 251).

The ALJ provided reasons that are well supported by the record for the step two finding of nonseverity and the step three and four findings that Plaintiff's mental impairment did not limit his ability to work.

Plaintiff also contends that the ALJ erred in failing to consider his "obesity" beyond

---

[1]Under this provision, when the degree of a claimant's functional limitations stemming from a mental impairment are rated as "none" or "mild" and "none" in the fourth area, the agency "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

step two. But, again, Plaintiff points to no evidence in the record indicating that his impairment due to being "overweight," as the ALJ found, significantly and separately interfered with his ability to work. Plaintiff points only to his subjective assertion that he has "back pain" that could, combined with his excessive weight, interfere with his ability to work.

The ALJ found that Plaintiff's impairments, considered in combination, limited him to the performance of sedentary work with no more than occasional postural movements and no work with vibratory tools or around vibration. Nothing in the record demonstrates that his impairment due to being "overweight," as the ALJ found, would further limit Plaintiff's ability to work. The ALJ's RFC determination is supported by an adequate narrative statement and by substantial evidence in the record. The ALJ did not err in posing hypothetical questioning to the VE that included the ALJ's RFC findings. Under these circumstances, the VE's testimony provides substantial evidence to support the ALJ's step five decision.

IV. Duty to Recontact Physician and Evaluation of Medical Source Opinions

Plaintiff contends that the ALJ erred by failing to recontact Dr. Hubbard because Dr. Hubbard's office notes indicate he did not accurately record his notes but instead used "cutting and pasting." Plaintiff's Opening Brief, at 4. The regulations provide that if an ALJ determines there is insufficient evidence to determine disability the ALJ "may recontact [a] treating physician, psychologist, or other medical source," "request additional existing records," or seek further evidence from the claimant or another source, including a

consultative examiner. 20 C.F.R. § 404.1520(c).

Plaintiff does not allege that the evidence was insufficient to determine the issues relevant to the disability determination. Dr. Hubbard's treatment notes include objective physical and mental status examination findings, diagnostic assessments, and the treatment provided to Plaintiff. The record also contained the treatment notes of Plaintiff's treating urologist, Dr. Lauvetz, and the reports of CT scans and MRI imaging of Plaintiff's abdomen, as well as the physical RFC assessments of the agency medical consultants. This evidence was sufficient to allow the ALJ to determine the disability issue, and the ALJ did not err by failing to recontact Dr. Hubbard concerning his office notes.

Plaintiff also contends that the ALJ failed to evaluate Dr. Hubbard's and Dr. Lauvetz's medical "opinions," but Plaintiff does not point to any medical opinions provided by these physicians assessing Plaintiff's ability to perform work-related functions. See 20 C.F.R. § 404.1527(a)(2)(defining medical opinions as statements that reflect judgments about the nature and severity of a claimant's impairments, including "what you can still do despite your impairment(s), and your physical and mental restrictions"). Therefore, the ALJ did not err by failing to evaluate any "opinions" under the pertinent regulations and precedent. See, e.g., Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)(holding that, generally, a treating physician's opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques)(quoting Social Security Ruling 96-2p, 1996 WL 374188, at *2).

Plaintiff contends that the ALJ did not mention whether he had considered the report

of the "mental reviewers" and that this was error. Plaintiff then inconsistently argues that the report of the "mental reviewers" was "clearly erroneous because the reviewer first found Claimant had no medically determinable mental impairments, but then completed the PRT form showing mild limitations." Plaintiff's Opening Brief, at 5-6.

The ALJ stated that he had considered all of the evidence in the record (TR 18), and the Court must presume the truth of this statement. Moreover, as previously stated, the ALJ's findings with respect to Plaintiff's alleged mental impairment due to anxiety are consistent with the findings of Dr. Gerrity, the agency's medical consultant, that Plaintiff's alleged mental impairment had resulted in only mild functional limitations. (TR 412-424). Under these circumstances, where there was no apparent conflict in the evidence, the ALJ had no duty to expressly consider Dr. Gerrity's completed Psychiatric Review Technique form. See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996)(ALJ is not required to discuss every piece of evidence, only "uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects").

Plaintiff further contends that the ALJ erred by failing to expressly consider a single notation in the record made by a state agency clerk. This clerk noted that in a telephone interview with Plaintiff he had difficulty recalling dates and answering questions. (TR 228). But Plaintiff does not suggest how this isolated notation provided probative evidence of a mental impairment. The only objective medical evidence in the record to suggest a mental impairment is Dr. Hubbard's office notes reflecting he prescribed anti-anxiety medication to Plaintiff for a brief period of time. Plaintiff did not allege a mental impairment that

9

affected his memory or his ability to answer questions, and there is no objective medical evidence to support such an impairment. The ALJ did not err by failing to expressly discuss the notation by the state agency clerk.

V. Credibility

Plaintiff lastly contends that the ALJ's credibility determination was faulty. Plaintiff asserts that the ALJ "did not perform even the minimal discussion of the credibility factors required," but Plaintiff then goes on to address each of the reasons that the ALJ gave for discounting the credibility of Plaintiff's allegation that he was disabled due to pain and other subjective symptoms.

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about his symptom(s) and [their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).

An ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

When considering a claimant's subjective assertion that his or her pain is disabling,

the law is well established that such an allegation "is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." Id. The relevant procedure requires the ALJ to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between that impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain was in fact disabling. Luna v. Bowen, 834 F.2d 161, 163-164 (10th Cir. 1987).

To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ must consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities,

11

> subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna, 834 F.2d at 165-166; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(listing seven factors relevant to credibility analysis); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 3 (same). See Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p). An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

The ALJ's decision addresses several of these relevant factors in evaluating the credibility of Plaintiff's allegation of disabling pain and symptoms. The ALJ pointed to inconsistencies between Plaintiff's statements and the objective medical evidence in the record, Plaintiff's reports of his usual daily activities, his medications, inconsistencies in his own statements, including the inconsistency between his alleged disability onset date and the much later date on which he stopped working, and Plaintiff's acceptance of unemployment benefits for the time period in which he alleged he was disabled.

Plaintiff points to the principle that a claimant's minimal daily activities, by themselves, do not suggest an ability to perform the requirements of work. But the ALJ did

not rely entirely on Plaintiff's reported daily activities to support the credibility determination. Rather, the ALJ properly considered Plaintiff's report of his usual daily activities as one factor and also relied on objective medical evidence and other relevant factors in assessing Plaintiff's credibility.

Plaintiff contends that the ALJ erred in stating that "[t]here is no indication in the record of urgency or frequency in urination." (TR 23). Plaintiff then points to a few cryptic office notes of Dr. Hubbard dated either after Plaintiff's insured status expired or long before Plaintiff alleged he became disabled. The ALJ did not err in stating that during the relevant time period the record did not show persistent symptoms of urinary dysfunction.

Plaintiff contends that the ALJ erred in discounting his credibility because he received unemployment benefits during the relevant time period. But the receipt of unemployment benefits is inconsistent with an allegation of disability, and the ALJ properly considered this factor. See Pickup v. Colvin, 606 Fed. App'x. 430, 433 (10th Cir. 2015)(unpublished op.)(recognizing "ALJ's conclusion that Pickup is not credible because she received unemployment benefits . . . is entirely proper" because "[t]here is an obvious inconsistency between claiming an ability to work for purposes of obtaining unemployment compensation and claiming an inability to work for purposes of obtaining social security benefits"); Lately v. Colvin, 560 Fed. App'x. 751, 755 (10th Cir. 2014)(unpublished op.)(noting collection of unemployment benefits was appropriate factor for ALJ to consider because it "required her to attest that she was ready, willing, and able to work").

The ALJ provided specific and legitimate reasons for discounting Plaintiff's

13

subjective complaints and closely and affirmatively linked his credibility findings to substantial evidence in the record. Therefore, as there is no error and substantial evidence supports the Commissioner's determination, the determination should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before  October 15th , 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  25rd  day of  September , 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE